**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSE RODRIGUEZ,**

                              **Plaintiff,**

  vs.                                              9:15-cv-610
                                                           (MAD/TWD)

**THOMAS GRIFFIN,** *Superintendent and/or Chief Executive Officer, Eastern Correctional Facility,* **DR. MIKHAIL A. GUSMAN,** *Medical-Director; Eastern Correctional Facility, formerly known as* Dr. Guzman, *formerly known as* Dr. Gusman; **JOHN DOE,** *Dr., Health Care Provide; Eastern Correctional Facility;* **NANCY ANTHONY,** *Registered Nurse; Eastern Correctional Facility, formerly known as* Ms. Anthony, **MS. ANANDOLA,** *Registered Nurse, Eastern Correctional Facility, formerly known as* Ms. Anndola, Nurse, *formerly known as* Doctor Anandolas, **JANE DOE,** *Registered Nurse; Eastern Correctional Facility,* **JOHN/JANE DOE,** *Nurse Administrator of Medical Services, Eastern Correctional Facility,* **NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, BRIAN FISCHE, JEFFREY MCKOY, DARWIN LACLAIR, JOHN/JANE DOE,** *Doccs Administrator,* **JOHN/JANE DOE,** *Prison Administrator,*

                              **Defendants.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**PAUL, WEISS LAW FIRM - NEW**     **KAREN R. KING, ESQ.**
**YORK OFFICE**                       **ERIN J. MORGAN, ESQ.**
1285 Avenue of the Americas        **JOSEPH M. DELICH, ESQ.**
New York, New York 10019-6064
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**       **MATTHEW P. REED, AAG**
**STATE ATTORNEY GENERAL**     **NICOLE E. HAIMSON, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On May 1, 2017, Plaintiff Jose Rodriguez ("Plaintiff") submitted his Second Amended Complaint against Defendants New York State Department of Corrections and Community Supervision ("DOCCS"), Anthony J. Annucci, Brian Fischer, Jeffrey McKoy, Thomas Griffin , Darwin LaClair, Doctor Mikhail Gusman, Nancy Anthony, Ms. Anandola, DOCCS Administrator John/Jane Doe, Prison Administrator John/Jane Doe, Dr. John Doe, Nurse Jane Doe, and Nurse Administrator John/Jane Doe (collectively, "Defendants"). *See* Dkt. No. 34. The Second Amended Complaint alleges three causes of actions under 42 U.S.C. § 1983 against Defendants. First, Plaintiff alleges that Defendants DOCCS, Annucci, Fischer, Griffin, Gusman, Anthony, Anandola, Dr. Doe, Nurse Doe, and Nurse Administrator Doe were deliberately indifferent in providing Plaintiff medical care and as a result he suffered a cerebral stroke. *See id.* at ¶ 1. Second, Plaintiff claims that Defendants DOCCS, Annucci, and DOCCS Administrator Doe transferred Plaintiff to a less desirable prison in retaliation for asserting his medical indifference claim. *See id.* at ¶ 4. Third, Plaintiff claims that Defendants DOCCS, Annucci, McKoy, LaClair, and Prison Administrator Doe have denied him access to the courts by preventing him from communicating with his counsel. *See id.* at ¶ 5.

On July 3, 2017, Defendants filed a partial motion to dismiss. *See* Dkt. No. 53. Currently before the Court is Plaintiff's Second Amended Complaint and Defendants' motion to dismiss. For the following reasons, the motion is granted in part and denied in part.

## II. BACKGROUND

2

Plaintiff Jose Rodriguez ("Plaintiff") is a prisoner in the custody of DOCCS. *See* Dkt. No. 34 at ¶ 1. From 2007 to 2013, Defendant Fischer was the Acting Commissioner of DOCCS. *See id.* at ¶ 13. Since 2013, the role has been filled by Defendant Annucci. *See id.* at ¶ 12.

In 2011, while Plaintiff was incarcerated at Eastern Correctional Facility ("Eastern C.F."), he began suffering from a rapid heart rate and irregular breathing. *See id.* at ¶ 24. These "symptoms indicated a substantial risk of heart attack or stroke." *Id.* Plaintiff repeatedly complained about these symptoms to medical staff at Eastern C.F. *See id.* at ¶ 25.

The medical staff at Eastern C.F. dismissed his symptoms and refused to provide Plaintiff with an official interpreter, even though he speaks limited English. *See id.* at ¶¶ 27-28. In the course of treating Plaintiff, the medical staff did not consult with Plaintiff's prior physicians; order a computed tomography scan, an echocardiogram, or a magnetic resonance imaging scan; provide Plaintiff with a heart monitor; or prescribe Plaintiff even the most basic medication. *See id.* at ¶ 26. One unnamed Defendant, identified as Dr. Doe, suggested that Plaintiff engage in meditation. *See id.* at ¶ 27.

Defendant Gusman was the Medical Director of Health Services of Eastern C.F. and Defendant Griffin is the Superintendent of Eastern C.F. *See id.* at ¶¶ 15, 17. Defendants Anthony and Annadola were nurses at Eastern C.F. who are alleged to have provided Plaintiff with medical care. *See id.* at ¶ 18.

"On February 16, 2012, Plaintiff suffered a cerebral stroke and was rushed from Eastern C.F. to Albany Medical Center." *Id.* at ¶ 29. Plaintiff was incapacitated for several months following the stroke. *See id.* at ¶ 31. Around March 1, 2012, Plaintiff was transferred from Albany Medical Center to the regional medical unit at Coxsackie for rehabilitation and medical treatment. *See id.* at ¶ 30. While rehabilitation helped Plaintiff recover somewhat, he has not

been able to fully recover his communication and motor-skills. *See id.* at ¶¶ 31-32. Plaintiff is permanently paralyzed on his left side and "suffers from slurred speech, blurred vision, dizziness, and chronic headaches as a result of the stroke." *Id.* at ¶ 32. After ten months at Coxsackie, Plaintiff was transferred to Shawangunk Correctional Facility ("Shawangunk C.F."). *See id.* at ¶ 30.

On August 20, 2013, Plaintiff filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") at Eastern C.F. alleging improper medical treatment. *See id.* at ¶ 33. This grievance was investigated by a nurse administrator who submitted a report on September 10, 2013. *See id.* at ¶ 34. The IGRC concluded that Eastern C.F.'s medical personnel demonstrated deliberate indifference to Plaintiff's serious medical condition. *See id.* at ¶ 35. This finding was sent to Superintendent Joseph T. Smith who denied the grievance on September 30, 2016, stating that "there is nothing to support negligence on the part of Health Services staff." *Id.* at ¶ 36. Plaintiff appealed his claim to the Central Office Review Committee ("CORC"). *See id.* at ¶ 37. On April 16, 2014, CORC upheld Superintendent Smith's decision. *See id.*

On May 19, 2015, Plaintiff initiated this lawsuit *pro se*, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he was denied basic medical care. *See id.* at ¶ 39. On July 22, 2015, this Court found the claim was time-barred, but afforded Plaintiff the opportunity to amend his complaint. *See id.* at ¶ 40. Plaintiff submitted, and this Court accepted, the amended complaint on September 22, 2015. *See id.* After the Court dismissed the amended complaint, Plaintiff filed a notice of appeal, and on April 12, 2016, the Second Circuit appointed *pro bono* counsel ("Counsel") for Plaintiff. *See id.* at ¶ 41.

While working on the appeal, Plaintiff and Counsel met three times at Shawangunk C.F. during May and June 2016. *See id.* at ¶ 43. Shawangunk C.F. was approximately 80 miles

4

Counsel's office in Manhattan. *See id.* Plaintiff also repeatedly communicated with Counsel via telephone without any limits on the frequency or length of the calls. *See id.* Plaintiff alleges that at least one of Shawangunk's C.F. officials was aware of the lawsuit. *See id.* at ¶ 45. According to the Second Amended Complaint, a guard told Plaintiff that he knew that Plaintiff "wanted to get money from the State" soon after the Second Circuit appointed him with Counsel. *Id.*

On July 5, 2016, one week prior to the Second Circuit's deadline for Plaintiff's opening brief, DOCCS suddenly transferred Plaintiff from Shawangunk C.F. to Franklin Correctional Facility ("Franklin C.F."), located over 340 miles away from his family and Counsel. *See id.* at ¶¶ 44, 46. Defendant LaClair is the Superintendent of Franklin C.F.. *See id.* at ¶ 16. The Second Amended Complaint alleges that there was no legitimate reason to initiate the transfer. *See id.* at ¶ 46. While at Shawangunk C.F., Plaintiff "had an exemplary disciplinary record: he had satisfied all of his program requirements and has not had a single disciplinary ticket in over two years." *Id.* His record was so good that "[h]is classification was lowered from maximum to medium." *Id.*

As a result of the transfer to Franklin C.F., Plaintiff began having difficulties communicating with Counsel. Franklin C.F. is not easily accessible from New York City—"the only flights that service the area from New York City require the traveler to connect through Boston and fly to an airport that is still a 50 minute drive from Franklin." *Id.* at ¶ 44. This made it difficult for Plaintiff to meet with his legal counsel in person. *See id.* Not only were in person meetings more difficult at Franklin C.F., but as Plaintiff and Counsel discovered, Franklin C.F. strictly enforces DOCCS Directive 4423 ("Directive 4423"), a policy approved by Defendant McKoy, the Deputy Commissioner of Program Services. *See id.* at ¶¶ 14, 50. Under Directive 4423, an inmate is restricted to one thirty-minute call with counsel every thirty days. *See id.* at ¶ 50. Plaintiff alleges that other correctional facilities do not enforce Directive 4423. *See id.* at ¶

5

51. Further, "[w]ritten communications are difficult because of [P]laintiff's language barrier and physical limitations. Discussions with counsel must therefore be conducted primarily by telephone." *Id.* at ¶ 49.

On July 13, 2016, Counsel attempted to contact Plaintiff and DOCCS refused to connect the call, stating that Plaintiff "would not be eligible to speak to his lawyers by phone until August 15, 2016." *Id.* at ¶ 50. Over the following nine months, Plaintiff was limited to one thirty-minute phone call with Counsel every thirty days. *See id.* Repeatedly, DOCCS would deny permission to extend the call duration and on at least one occasion, DOCCS terminated the call before the thirty minutes had elapsed. *See id.* at ¶¶ 53, 60.

Plaintiff initiated a formal complaint on October 11, 2016. *See id.* at ¶ 54. He "requested to be transferred to a facility close to home' and 'to [be able to] to consult with [my] attorney on a weekly basis." *Id.* (quotation omitted). On October 31, Plaintiff met with Offender Rehabilitation Counselor David Jacobs ("ORC Jacobs") seeking an explanation for why he could not be transferred to a facility closer to home. *See id.* at ¶ 55. ORC Jacobs explained that there was simply "no room anywhere less remote." *Id.*

On November 9, 2016, Plaintiff filed a second administrative grievance requesting the same relief. *See id*. at ¶ 56. The following day, Plaintiff submitted a complaint in writing to three DOCCS administrators, one of whom was Defendant McKoy. *See id.* at ¶ 57. In response to this second grievance, Plaintiff "was advised that all administrative remedies [were] exhausted on this issue and that Albany (Central Office) is stating no room at any facility for him." *See id.* at ¶ 58 (quotation omitted).

On December 22, 2016, the Second Circuit vacated this Court's decision and remanded for further proceedings. *See* Dkt. No. 22. On March 6, 2017, Plaintiff filed a letter motion

6

requesting leave to file a second amended complaint. *See* Dkt. No. 28. On March 10, 2017, this Court granted the letter motion. *See* Dkt. No. 29.

On May 1, 2017, Plaintiff submitted the Second Amended Complaint. *See id.* In addition to the medical indifference claim from the original complaint, Plaintiff asserted two new causes of action based on violations of the First Amendment; DOCCS' decision to transfer him was in retaliation for his lawsuit, and Directive 4423 effectively deprives Plaintiff of the ability to communicate with Counsel, which denies him proper access to the courts. *See id.* at ¶¶ 69-80.

### III. DISCUSSION

**A. Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

**B.      First Amendment Access to the Courts**

A prison's restrictions on an inmate's telephone use may violate the inmate's First Amendment right to access the courts. *See Kwok Sze v. Annucci,* No. 13-CV-534, 2017 WL 913646, *2 (N.D.N.Y. Mar. 7, 2017). To state a claim that phone restrictions impermissibly impede an inmate's access to the courts, the complaint must not only allege that the prison has placed restrictions on telephone use, but also that the inmate has no alternative method of communicating with counsel. *See id.* (citations omitted). "[A] prisoner's access to counsel via telephone may be restricted so long as the prisoner has some other avenue to communicate, even if less than ideal." *Ahlers v. Townsend*, No. 12-CV-0575, 2014 WL 4365277, *5 (N.D.N.Y. Aug. 28, 2014).

Defendants argue that Plaintiff's claim fails because he still has access to communicate with Counsel through in-person meetings and mail correspondence. *See* Dkt. No. 53-1 at 11.

Plaintiff argues that the distance between Counsel and Franklin C.F., combined with Plaintiff's physical disabilities and language difficulties are significant barriers to alternative avenues of communication. *See* Dkt. No. 56 at 17.

Although multiple federal district courts sitting in New York State have upheld prisons' restrictive telephone policies, all of these decisions noted that the inmates were able to meet with their counsel in person or engage in written correspondence. *See, e.g.*, *Kwok Sze*, 2017 WL 913646, at *2 ("Here, the facts demonstrate that Sze had and used alternative means to communicate with his attorneys"); *Ahlers*, 2014 WL 4365277, at *5 ("Plaintiff could have met with his attorney via mail or in person"); *Martinez v. Healey*, No. 14-CV-302, 2014 WL 5090056, *3 (S.D.N.Y. Oct. 10, 2014) (granting the defendant's motion to dismiss where "there is no suggestion in the pleadings that any employee precluded Plaintiff from communicating with counsel, whether in person or by other alternate means"); *Harrison v. SecurusTech.Net*, No. 13-CV-4496, 2014 WL 737830, *4 (E.D.N.Y. Feb. 24, 2014) ("Notably, Plaintiff does not allege that he is unable to communicate through the mail or during visitation").

In *Lewis v. Casey*, 518 U.S. 343, 356 (1996), the Supreme Court determined that individualized ability to access courts is the touchstone of the analysis. The plaintiffs in *Lewis* were a group of prisoners who claimed that they were provided with insufficient legal resources to sufficiently litigate their claims. *See id.* at 346. The Supreme Court concluded that even where a prison provides law libraries and assistance adequate for most inmates, "the State has failed to furnish adequate" resources where an inmate is unable to effectively use them due to illiteracy or language barriers. *Id.* at 356. The decision stated that the constitutional right to access the courts was not a guarantee of a "particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before

9

the courts." *Id.* The gravamen of the analysis is not whether most inmates could access the courts with the resources provided by the prison, but instead whether the specific inmate in question is actually able to utilize them. *See id.* at 356-57 ("[I]t is that capability, rather than the capability of turning pages in a law library that is the touchstone"). Thus, while "the State is not obligated to provide the best manner of access," *Pino v. Dalsheim*, 558 F. Supp. 673, 675 (S.D.N.Y. 1983), a system that allows access to counsel in theory but denies it in practice is insufficient. *See Lewis*, 518 U.S. at 356-57.

Here, Plaintiff is partially paralyzed, suffers from blurry vision as a result of the stroke, and is not a native English speaker. According to the Second Amended Complaint, these combine to make legal correspondence by mail particularly difficult. Further, as the prison is located 380 miles away from Counsel's office in Manhattan, visits in person are functionally impractical. Given that the focus of the access to the courts analysis is on whether Plaintiff was *actually* able to communicate with Counsel, the barriers alleged in the Second Amended Complaint paint a plausible portrait of an inmate who is unable to communicate with his attorney. Therefore, Defendants' motion to dismiss the second claim is denied.

**C.    DOCCS and the Eleventh Amendment**

The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against a state or one of its agencies absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.* at 100. Congress did not abrogate the Eleventh Amendment immunity granted to the states when it enacted 42 U.S.C. § 1983 because it is well settled that

states are not "persons" under section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *see also Quern v. Jordan*, 440 U.S. 332, 240-41 (1979).

Defendants move to dismiss all claims against DOCCS because DOCCS is a New York State agency. Plaintiff argues that he is seeking prospective relief, which is permissible under *Ex parte Young*, 209 U.S. 123 (1908). However, as the *Ex parte Young* exception only applies to state officials acting in their official capacity, not to states or their agencies, it does not apply to DOCCS. Therefore, Defendants' motion to dismiss all claims against DOCCS is granted.

## D.     **Personal Involvement of Individual Defendants**

"It is well settled in [the Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Therefore, a supervisory official may not be held liable solely on the ground that they held a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citation omitted).

Personal involvement is a question of fact and must be satisfied as to each individual defendant. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (citation omitted). "A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009) (citations omitted). Supervisory personnel may satisfy the personal involvement requirement if:

> (1) The defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising

11

>	subordinates who committed the wrongful acts; or (5) the defendant
>	exhibited deliberate indifference to the rights of inmates by failing
>	to act on information indicating that unconstitutional acts were
>	occurring.

*Colon*, 58 F.3d at 873.

### *1. Medical Indifference*

Defendants have moved to dismiss Plaintiff's medical indifference claim against Defendants Annucci, Fischer, Griffin, and Gusman on the grounds that Plaintiff failed to sufficiently allege personal involvement. *See* Dkt. No. 53-1 at 9.

#### *i. Defendants Annucci, Fischer, and Griffin*

Plaintiff argues that Defendants Annucci, Fischer, and Griffin were responsible for the policies and practices at Eastern C.F. that resulted in the medical indifference. *See* Dkt. No. 56 at 15-16. According to Plaintiff, these three defendants, in their roles as the Acting Commissioner of DOCCS and Superintendent of Eastern C.F., were personally involved with the medical indifference because they set the policies that led to the medical indifference. *See id.* However, the Second Amended Complaint does not allege the existence of any specific policies or customs that led the medical staff to ignore Plaintiff's symptoms or refuse to provide him with a translator. The only policies or customs related to medical indifference mentioned in the Second Amended Complaint are legal conclusions and thus insufficient to establish personal responsibility. *See* Dkt. No. 34 at ¶ 64.

Plaintiff also argues that Defendants Annucci and Fischer had actual or constructive knowledge of what happened to Plaintiff because they were the Acting Commissioners of DOCCS and had final authority in denying Plaintiff's initial administrative grievance. *See* Dkt. No. 56 at 16.

12

Imputing personal involvement requires more than just notice. Merely alleging notice via a complaint through a prison's formal grievance process is not in itself sufficient to establish personal involvement. *See McKenna v. Wright*, 386 F.3d 432, 438 (2d Cir. 2004). "The grievance must [have] allege[d] an 'ongoing' constitutional violation that the supervisory official who review[ed] the grievance [could] remedy directly." *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009); *see also Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation").

Here, regardless of whether Defendants Annucci and Fischer had notice, it is clear that the violation was not ongoing when Plaintiff filed his administrative grievance. Plaintiff initiated the grievance process after he had left Eastern C.F. Thus, by the time that Defendants Annucci and Fischer could have had notice, Plaintiff was no longer subject to Eastern's medical care.

Therefore, Defendants' motion to dismiss Plaintiff's medical indifference claim against Defendants Annucci, Griffin, and Fischer is granted.

### *ii. Doctor Mikhail Gusman*

Plaintiff argues that Defendant Gusman participated directly in the medical indifference at Eastern C.F. because he was a member of the medical staff who may have treated Plaintiff and, as medical director of Eastern C.F., he could have been grossly negligent in supervising his subordinates. *See* Dkt. No. 56 at 13-14. However, the Second Amended Complaint alleges no facts suggesting that Defendant Gusman was involved in directly providing Plaintiff medical care or that his management of Eastern C.F.'s medical staff was grossly negligent. Other than naming him as a defendant, Defendant Gusman is only mentioned in the Second Amended Complaint to identify him as the Medical Director of Health Services at Eastern C.F. Therefore, Defendants'

13

motion to dismiss Plaintiff's medical indifference claim against Defendant Gusman is granted. However, given the seriousness of Plaintiff's harm, Defendant Gusman's involvement in supervising the medical staff at Eastern C.F., and the fact that Plaintiff's communication with Counsel has been limited, the Court grants Plaintiff 30 days to amend his complaint with regards to his medical indifference claim against Dr. Gusman.

### *2. First Amendment Access to the Courts*

Defendants also have moved to dismiss the First Amendment access to the courts claim against Defendants Annucci and LaClair as the Second Amended Complaint fails to allege that they were personally involved in depriving Plaintiff of access to the courts. *See* Dkt. No. 53-1 at 10.

#### *i. Defendant Annucci*

Plaintiff argues that as the Acting Director of DOCCS, Defendant Annucci was responsible for Directive 4423. *See* Dkt. No. 56 at 17. However, Plaintiff has failed to allege sufficient facts to establish Defendant Annucci's personal involvement in denying Plaintiff access to the courts. For a supervisor to be liable for a policy or custom within their control, "it is not sufficient that such a policy or practice continued to exist during defendant's tenure; defendant must have known of it as well." *K & A Radiologic Tech. Services, Inc. v. Comm'r of the Dep't of Health of the State of N.Y.*, 189 F.3d 273, 278 (2d Cir. 1999).

Here, Plaintiff points to Directive 4423 as a specific policy that is allegedly depriving Plaintiff of his constitutional rights. However, the Second Amended Complaint states that Policy 4423 was promulgated by the Deputy Commissioner of Program Services, an office below Defendant Annucci's. Further, Plaintiff acknowledges that Policy 4423 was not enforced uniformly across DOCCS facilities. These suggest that Defendant Annucci had no reason to be

14

aware of the policy's creation or existence. As the Second Amended Complaint makes no specific allegations regarding Defendant Annucci's involvement with Policy 4423, Plaintiff has failed to plausibly allege that Defendant Annucci was actually aware of the policy. Therefore, Defendants' motion to dismiss Plaintiff's access to the courts claim against Defendant Annucci is granted.

### *ii. Darwin LaClair*

Plaintiff argues that as superintendent of Franklin C.F., Defendant LaClair is responsible for the facility. According to the Second Amended Complaint, Franklin C.F. strictly enforces Directive 4423, which is out of step with the standard practices of other prisons in New York State. However, while Defendant LaClair may be in charge of the facility, the Second Amended Complaint does not allege that Defendant LaClair was involved with or aware of Directive 4423 at Franklin C.F. Further, while the Second Amended Complaint alleges that Plaintiff notified multiple individuals who worked for DOCCS and Franklin C.F. about his difficulties communicating with Counsel, the Second Amended Complaint does not allege that his complaints about his inability to communicate with Counsel were ever sent to or received by Defendant LaClair. Therefore, the Second Amended Complaint does not plausibly allege that Defendant LaClair was personally involved with Franklin C.F.'s implementation of Directive 4423 and Defendants' motion to dismiss Plaintiff's access to the courts claim against Defendant LaClair is granted.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 53) is **GRANTED in part** and **DENIED in part**;[1] and the Court further

**ORDERS** that Defendants DOCCS, LaClair, Fischer, and Griffin be terminated as parties; and the Court further

**ORDERS** that Defendant Gusman be terminated as a party unless Plaintiff amends the complaint as to Plaintiff's medical indifference claim against Defendant Gusman's within **THIRTY (30) DAYS**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 15, 2018
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[1] Defendants' motion is granted for all claims against Defendants DOCCS, Fischer, Griffin, Gusman, and LaClair. Defendants' motion to dismiss Plaintiff's medical indifference and access to the courts claims against Defendant Annucci is also granted. Defendants' motion to dismiss Plaintiff's entire access to the courts claim is denied.