PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS      NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

WRITER'S DIRECT DIAL NUMBER
(212) 373-3343

WRITER'S DIRECT FACSIMILE
(212) 492-0343

WRITER'S DIRECT E-MAIL ADDRESS
roloughlin@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

November 2, 2018

Hon. Thérèse Wiley Dancks
U.S. District Court
100 S. Clinton Street
Syracuse, NY 13261

Re: *Rodriguez v. Griffin et al.*, Civil Action No. 9:15-CV-0610

Dear Judge Dancks:

We write on behalf of Plaintiff Jose Rodriguez in response to the Court's October 15, 2018, request for briefing regarding the effect of Mr. Rodriguez's deportation to the Dominican Republic on the prosecution of this case. For the reasons set forth below, the Court should permit Mr. Rodriguez to pursue this action.

### I. Background

On May 19, 2015, Mr. Rodriguez commenced this action *pro se*, alleging that he suffered a stroke while incarcerated at Eastern Correctional Facility as a result of failures by prison staff to provide adequate medical treatment in violation of the Eighth Amendment. After the district court dismissed his complaint *sua sponte*, counsel was appointed to represent him on appeal. While the appeal was pending, Mr. Rodriguez was abruptly transferred to a remote facility and his phone access to his attorneys was severely restricted. Accordingly, after the Second Circuit reversed the dismissal and remanded the case, Mr. Rodriguez amended his complaint to assert additional claims for retaliatory transfer and unlawful restriction of his right to access the courts, both in violation of the First Amendment.

Mr. Rodriguez was released from prison on or about September 6, 2017, approximately four months after the Second Amended Complaint had been filed. He was shortly thereafter deported to the Dominican Republic on October 3, 2017, based on an order of removal that had been pending against him since 1999. (O'Loughlin Decl. ¶ 1 & Ex. A.) Because of this order, it would not be feasible for Mr. Rodriguez to reenter the United States; in fact, he would be subject to criminal penalties if he did. *See* 8 U.S.C. § 1326. For more than a year since Mr. Rodriguez was deported, this litigation has

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Thérèse Wiley Dancks                                                                                       2

proceeded unaffected by his location.  Mr. Rodriguez has been actively involved in the case and in regular contact with counsel.  (O'Loughlin Decl. ¶ 3.)

On October 15, 2018, during a telephonic discovery conference, the Court raised, *sua sponte*, the issue of whether it is feasible for Mr. Rodriguez to continue to litigate his claims following his deportation, and requested briefing on the matter.  The Federal Rules and case law within the Second Circuit indicate that Mr. Rodriguez's deportation does not mandate dismissal of his case.  *First*, the Federal Rules allow him to be deposed in the Dominican Republic, either in-person or by videoconference.  *Second*, either that deposition testimony can be used at trial in lieu of live testimony, or, with the Court's permission, he can testify via video transmission.  Mr. Rodriguez's physical absence has not and will not cause undue delay in the proceedings, or be overly burdensome on or prejudicial to Defendants.

II.     **Mr. Rodriguez Can Be Deposed in the Dominican Republic, Either In-Person or by Videoconference**

Under the Federal Rules of Civil Procedure, "there is no absolute rule as to the location of the deposition of a nonresident plaintiff." *Normande v. Grippo*, No. 01 Civ. 7441 (JSR)(THK), 2002 WL 59427, at *1 (S.D.N.Y. Jan. 16, 2002) (citing Wright et al., 8A Fed. Prac. & Proc. Civ. § 2112 (3d ed. 2018)) (explaining that plaintiff will not be required to appear for a deposition in the district where the action is pending if she can show "good cause").  While the district in which the case has been filed is presumptively an appropriate forum for the deposition of a plaintiff, it is not the only appropriate forum, especially when "special circumstances are shown, such as hardship or burden to the plaintiff, which outweigh any prejudice to the defendant." *See, e.g.*, *Ward v. Leclaire*, No. 9:07-CV-0026 (LEK)(RFT), 2008 WL 1787753, at *5 (N.D.N.Y. Apr. 17, 2008) (quoting *Abdullah v. Sheridan Square Press, Inc.*, 154 F.R.D. 591, 592 (S.D.N.Y. 1994)).  Indeed, courts have recognized that "[g]enerally, 'the proper place for taking an individual's deposition is his or her place of *residence*.'" *Koch v. Pechota*, No. 10 Civ. 9152, 2012 WL 2402577, at *6 (S.D.N.Y. June 26, 2012) (quoting *FDIC v. La Antillana, S.A.*, No. 88 Civ. 2670 (JFK), 1990 WL 155727, at *1 (S.D.N.Y. Oct. 5, 1990)) (emphasis added).

Due to Mr. Rodriguez's deportation, he cannot lawfully return to the United States absent an order from the Attorney General allowing him to reapply for admission.  *See* 8 U.S.C. § 1326(a).  Thus, it is exceedingly unlikely that he will be able to come to the Northern District of New York for a deposition.  The circumstances suggest that he should be deposed in the Dominican Republic where he resides, rather than where this case is pending.

That Mr. Rodriguez now lives outside the United States does not present any insurmountable problems.  Federal Rule of Civil Procedure 28(b) provides that, among other methods, a deposition may be taken in a foreign country under a "letter of request" issued by the Court (often called a "letter rogatory"), or "on notice, before a

Hon. Thérèse Wiley Dancks					3

person authorized to administer oaths either by federal law or by law in the place of examination." Fed. R. Civ. P. 28(b)(1). Mr. Rodriguez is willing to stipulate to a deposition in the Dominican Republic under whatever procedure satisfies the Court, Defendants, and the requirements of local law, *see* Fed. R. Civ. P. 29(a), and does not foresee any obstacles in conducting his deposition in the Dominican Republic.[1]

To the extent Defendants attempt to argue that travel to the Dominican Republic is burdensome,[2] Federal Rule of Civil Procedure 30(b)(4) allows—on stipulation of the parties or by order of the Court—a deposition to be taken "by telephone or other remote means." As the Second Circuit has noted, while live testimony is preferable, "any difficulties . . . regarding the unavailability of parties or witnesses can most likely be resolved by the use of videotaped depositions." *Dirienzo v. Philip Services Corp.*, 294 F. 3d 21, 30 (2d Cir. 2002) (quoting *Overseas Programming Cos., Ltd. v. Cinematographische Commerz–Anstalt*, 684 F.2d 232, 235 (2d Cir. 1982)). Especially where, as here, "the plaintiff is physically or financially unable to come to the forum," courts have not hesitated to allow the plaintiff to be deposed in another location through means such as telephone or videoconference.[3] *Rosario v. Anson*, No. 9:12-cv-1506 (GLS)(CFH), 2014 WL 4418052, at *2 (N.D.N.Y. Sept. 8, 2014); *see also, e.g.*, *SEC v. Aly*, 320 F.R.D. 116, 119 (S.D.N.Y. 2017).

In *Stephens v. 1199 SEIU*, a case with facts very similar to this one, the plaintiff was deported to Jamaica after the beginning of the litigation but prior to her deposition. No. CV 07–0596 (JFB)(AKT), 2011 WL 2940490, at *1 (E.D.N.Y. July 19, 2011). When the plaintiff requested that the court permit her deposition to be conducted telephonically, the defendants opposed, asserting that they would not have an opportunity to see plaintiff's demeanor and to see what documents were present when she was answering questions. The court recognized that "[a]lthough as a general practice, a Plaintiff is deposed in the forum where the action was brought," nothing restricts a plaintiff from being deposed remotely. *Id.* The court determined that the concerns expressed by the defendants "are not uncommon problems which exist with every telephone deposition," and therefore denying the plaintiff's request for a telephone deposition would in effect be "tantamount to repealing [Federal Rule of Civil Procedure 30(b)(4)]." *Id.* at *2 (internal citation omitted). Ultimately, the court allowed the deposition by remote means, on the condition that if it were to be conducted for the purpose of and used at trial in lieu of live testimony, it would need to be done via videoconference and taped. *Id.* at *2–3. Similarly, the court in *Koch v. Pechota* denied

---

[1] Mr. Rodriguez's counsel have contacted potential local counsel in the Dominican Republic who will be able to assist with coordinating his deposition. (O'Loughlin Decl. ¶ 4.)

[2] In fact, counsel have been discussing for several months scheduling Mr. Rodriguez's deposition in the Dominican Republic. (O'Loughlin Decl. ¶ 4.)

[3] A deposition taken by remote means "takes place where the deponent answers the questions." Fed. R. Civ. P. 30(b)(4). Thus, even if Mr. Rodriguez is deposed by videoconference, his deposition would still be considered to take place in the Dominican Republic.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Thérèse Wiley Dancks    4

the defendants' request for an order directing the plaintiff to appear in the district for a deposition. 2012 WL 2402577, at *6. The plaintiff resided in the Czech Republic and worried that she "might encounter more trouble attempting to enter the country without a visa," including arrest or deportation. *Id*. at *7. In these circumstances, the court found that "[i]n considering the cost, convenience, and litigation efficiency, the deposition of [Plaintiff] should commence in the Czech Republic via videoconference." *Id*.

As these cases demonstrate, the fact that Mr. Rodriguez has been deported to the Dominican Republic and is unable to come to the Northern District of New York for a deposition does not mean that this case cannot proceed.

### III. Mr. Rodriguez Can Either Preserve His Trial Testimony by Deposition, or Can Testify at Trial Through Video Transmission

Federal Rule of Civil Procedure 32(a)(4) allows the deposition testimony of a party to be used at trial when the witness is unavailable, including "if the court finds that the witness is more than 100 miles from the place of the hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition." Here, Mr. Rodriguez resides in the Dominican Republic following his deportation—well more than 100 miles from the Northern District of New York—and cannot lawfully return to the United States absent an order from the Attorney General allowing him to reapply for admission. *See* 8 U.S.C. § 1326(a). Defendants will have an opportunity to depose Mr. Rodriguez in the Dominican Republic, either in-person or through videoconference.[4] Thus, there can be no objection to using his deposition testimony at trial if he continues to be unable to attend trial in person.

Cases in which a party's deposition was not allowed to be used at trial are distinguishable. For example, in *Junjiang Ji v. Jling Inc.*, the court did not allow Plaintiff to use his deposition testimony at trial. However, in so deciding, the court emphasized that the plaintiff had no evidence he was unavailable, and in fact admitted he "never gave any thought of returning to the United States and that he was only of the opinion that any attempt would be unsuccessful."[5] No. 15-CV-4194 (SIL), 2017 WL 6501865, at *2 (E.D.N.Y. Dec. 19, 2017). Here, Mr. Rodriguez's deportation order (O'Loughlin Decl. Ex. A) establishes that he cannot return to the U.S. without risking arrest or deportation.

In the alternative to using deposition testimony at trial, Federal Rule of Civil Procedure 43 allows a party to testify at trial via video-conference, "[f]or good

---

[4]    Indeed, both the Second Circuit and the Northern District of New York have noted that videotaped depositions used at trial provide the jury an adequate opportunity to assess the credibility of the witness. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002); *Traver v. Officine Meccaniche Toshci SpA*, 233 F. Supp. 2d 404, 416–17 (N.D.N.Y. 2002).

[5]    Nevertheless, the Court in *Junjiang Ji* ultimately permitted the Plaintiff to testify live via video transmission, noting the burdens imposed on "an undocumented low wage worker . . . who risks arrest by his attendance." 2017 WL 6501865, at *3.

Hon. Thérèse Wiley Dancks                                                                                     5

cause in compelling circumstances and with appropriate safeguards." Although the Rule 43 Advisory Committee notes emphasize that "the importance of presenting live testimony in court cannot be forgotten," video testimony is an acceptable alternative.[6] Indeed, "the use of video conferencing technology to permit a . . . plaintiff's participation in a trial . . . has been and continues to gain growing acceptance." *Thomas v. O'Brien*, No. 5:08-CV-0318 (DEP), 2011 WL 5452012, at *6 (N.D.N.Y. Nov. 8, 2011).

Courts frequently allow plaintiffs who are unable to come to the United States due to their immigration statuses to testify via video at trial, finding that such situations are "compelling circumstances" under Rule 43(a). *See, e.g.*, *Monserrate v. K.K. Mach. Co.*, No. 10-3732 (TLM), 2013 WL 1412194, at *1–3 (S.D.N.Y. Apr. 8, 2013); *Angamarca v. Da Ciro, Inc.*, 303 F.R.D. 445, 448 (S.D.N.Y. 2012); *Junjiang Ji*, 2017 WL 6501865, at *1–3; *see also, e.g.*, *El-Hadad v. United Arab Emirates,* 496 F.3d 658, 668–69 (D.C. Cir. 2007) (permitting videoconference testimony at trial when plaintiff had been denied a visa to the United States); *Lopez v. Miller*, 915 F. Supp. 2d 373, 396 & n.9 (E.D.N.Y. 2013) (permitting testimony by videoconference at an evidentiary hearing by a witness who had been deported to the Dominican Republic).

In the event that Mr. Rodriguez's deposition or trial testimony is conducted via video transmission, any concern from Defendants regarding potential prejudice can be easily addressed through procedural safeguards imposed by the Court, including delivering documents and testing technology ahead of time, and ensuring that the jury is able to see the witness. *See Virtual Architecture, Ltd. v. Rick*, No. 08 Civ. 5866 (SHS), 2012 WL 388507, at *1–2 (S.D.N.Y. Feb. 7, 2012); *Monserrate*, 2013 WL 1412194, at *1–2.

While some courts have expressed concern about a deported *pro se* plaintiff's ability to effectively prosecute his case when he cannot appear for a deposition or trial,[7] Mr. Rodriguez has not been an absentee party and the case has proceeded on schedule since his deportation. He is able to be deposed in the Dominican Republic whether in-person or by videoconference, and his counsel will be able to represent him in the courtroom at trial. These circumstances thus do not warrant dismissal of Mr. Rodriguez's case. *See Thomas*, 2011 WL 5452012, at *6 (holding that trial testimony via videoconference was acceptable as "plaintiff [was] appointed *pro bono* counsel who [would be] present in the courtroom on his behalf").

---

[6] The Advisory Committee notes to Rule 43 further provide that "[o]rdinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena, or of resolving difficulties in scheduling a trial that can be attended by all witnesses."

[7] *See, e.g.*, *Brown v. Wright*, No. 05-CV-82 (FJS)(DRH), 2008 WL 346347, at *4 (N.D.N.Y. Feb. 6, 2008) (deported *pro se* plaintiff has no one to "present his claims" at trial); *Reynoso v. Selsky*, No. 02-CV-6318 (CJS), 2011 WL 3322414, at *3 (W.D.N.Y. Aug. 2, 2011) (deported *pro se* plaintiff "has failed to communicate with court since April 1, 2010").

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Thérèse Wiley Dancks                                              6

                                               Respectfully submitted,

                                               Robert J. O'Loughlin

Attachment

cc:     All Counsel of Record (by ECF)